## SHERBURN *v.* BEATTIE & a.

If an officer having one under arrest on execution, permit him to pass into a neighboring State, it is a voluntary escape, and he can not retake the prisoner in the jurisdiction in which the arrest was made, and therefore he can not do it in the other.

*It seems,* an officer can not pursue and retake in another jurisdiction a prisoner who has escaped from his custody.

TRESPASS. The plaintiff alleging that the defendants at Lyman in said county on August 25th, 1842, assaulted the plaintiff, and without lawful authority arrested him, and carried him forty miles to a jail, and there imprisoned him for the space of ten days, &c., &c.

The defendants pleaded the general issue severally, and each accompanied his plea with a brief statement of facts in justification of any acts alleged in the declaration and found on trial.

It appeared in evidence that on or about "the 15th of August, 1842, Beattie, one of the defendants, was a constable of the town of Ryegate, in the county of Caledonia, in the State of Vermont, and duly authorized as such to serve the precept hereinafter described ; and by virtue of an execution duly issued upon a judgment in favor of Chester Gay against the plaintiff in this action, recovered May 7th, 1842, before William Gray, a justice of the peace for said County of Caledonia, arrested the plaintiff, who stated to Beattie that he was not ready to go to Danville to jail on that day ; and upon his request such arrangements were made that Beattie left the plaintiff in the custody of one Kimball, who was to deliver him up on the then next Monday or Tuesday ; and he was delivered up to Beattie accordingly ; and Beattie proceeded with him on the route toward the jail until he arrived at the mills at McIndoe's Falls, when said Sherburn requested permission to go down upon the raft that then lay in the Connecticut river within the limits of the State of New-Hampshire, to see one Samuel Moore, a relation of the plaintiff, and permission was given by Beattie ; and Sherburn left Beattie and went down upon the raft ; and after getting upon the raft he refused to return to the custody of Beattie, and Beattie then went upon the raft, and endeavored to coerce the return of Sherburn to Vermont by force, but did not succeed ; and Sherburn soon got into a boat and crossed the river, and came into New-Hampshire, where he remained several days, when Beattie and Stevens, the other defendant, in aid of Beattie, came into the town of Lyman in this State, and there arrested the plaintiff ; and by force against his will carried him into Vermont, and there imprisoned him in the jail in Danville.

Upon proof of the foregoing facts, the court instructed the jury, that the same did not constitute a defence to the action, and did not justify the arrest at Lyman; and a verdict was rendered in favor of the plaintiff. The defendants excepted to the said ruling, and moved to set aside the verdict for alleged error therein.

*Quincy*, for the defendants. The right of recaption in this case was a personal right, and similar to that of bail to retake the principal. Bail may retake without the State. 7 Johns. 155; 1 Root 107; 5 Day 244.

The case in Vermont between these parties was settled according to the doctrine of 8 Vermont 194. It was not competent for the party under the circumstances, to allege that the escape was voluntary.

*Hibbard*, for the plaintiff. 1. The leaving of Sherburn by Beattie, after he had been taken on the execution, in the keeping of Lloyd Kimball, from August 13 to August 17, with the understanding that Kimball was to deliver him up by a certain day or pay a portion of the debt, and the consequent going at large of Sherburn, as appeared from the deposition of Kimball, was a voluntary escape; and Beattie had no right to retake him at all on that execution.

On final process, the sheriff is commanded to "take the body of the defendant and commit him to jail." The prisoner is in *custodia arcta et salva.* The sheriff does not obey the precept unless he commits the defendant into jail immediately after the arrest. The object of final process is to deprive the defendant of his liberty, that he may be induced to make payment of the judgment against him; and the object of the process is delayed, if not defeated, by an escape of any kind. *Langdon* v. *Hathaway,* 1 N. H. 367.

---

Sherburn v. Beattie.

---

If a voluntary escape be permitted on execution by the sheriff, the creditor can still cause the debtor to be taken on an alias execution, his property to be seized, or an action of debt to be brought on the judgment. But the sheriff has no such power, unless by consent of the creditor. *Cheever* v. *Mirrick* & a., 2 N. H. 376.

The Court said, "After a voluntary escape the sheriff, without permission from the creditor, has no remedy against the debtor upon the former judgment or execution. His only redress is a new promise running to himself." Reference is made to 8 East. 171; 2 D. & E. 176.

If an officer after having arrested a debtor on an execution, commits him to the custody of a third person, who without the knowledge of the officer, voluntarily permits his prisoner to go at large, such permission will be considered as the act of the officer, and consequently a voluntary escape. *Commonwealth* v. *Drew* & a., 4 Mass. 391.

If an officer having arrested a debtor on an execution, voluntarily permits him to escape, he can not afterward retake him on the same execution, nor is the debtor liable to the officer for any damage he may suffer in consequence of the escape. *Appleby* v. *Clark*, 10 Mass. 59; *Brown* v. *Getchell*, 11 Mass. 11; *Commonwealth* v. *Drew* & a., 4 Mass. 391.

"To constitute a voluntary escape, it is not necessary that the officer actually intend an escape, but one may be through his carelessness." *Skinner* v. *White*, 9 N. H. 210, and the authorities there cited.

The permitting the debtor to be out of the sheriff's custody for any purpose, or for the shortest space of time, will amount to an escape : as when the sheriff of a liberty after arresting the debtor takes him out of the bailiwick and delivers him into the county jail, *or the debtor is allowed to go out and settle his affairs in the custody of a bailiff.* 2 Starkie 749.

Same page (note), *Benton* v. *Sutton*, 1 B. & P. 24, where

the sheriff permitted the debtor to go about with a follower before he took him to prison. Per Eyre, C. J. The custody of the follower after the writ was executed amounted to nothing; he could have no power to detain the prisoner if he had chosen to escape, and the warrant would have been no justification to him if mischief had happened. See *Stevens* v. *Webb*, 2 Vt. 344, where precisely the point in this case is discussed and decided.

2. We say that there was another voluntary escape when the officer came with Sherburn on to the raft, which lay in New-Hampshire out of his jurisdiction. He came voluntarily and unnecessarily, not in the way to the jail, where his precept gave him no power, and was of no avail. Sherburn had a right to go where he pleased, and the execution was after that good for nothing. This position is fortified by the authorities cited above, particularly 2 Starkie 749.

3. Had there been no escape, the execution would have afforded the defendants no justification for coming from Vermont into New-Hampshire, arresting Sherburn, and carrying him out of the State. The doctrine of fresh suit can not apply here. The sheriff of another State can not pursue and retake in this State a prisoner who has escaped from his custody on civil process. *Bromley* v. *Hutchins*, 8 Vt. 194.

This case, as it seems to us, covers the whole ground. The officer here was guilty of an act of kidnapping, which is made a felony and punishment by confinement in State Prison, by law of this State passed Nov. 1842. Revised Statutes, p. 435.

WOODS, J. It is not necessary to determine the general question, whether when after the escape of a debtor in execution, the sheriff has under the circumstances of the case, the right to retake the prisoner within the State in which the arrest took place, on fresh suit, the same

authority exists to pursue him beyond the jurisdiction and to retake him in another State.

In *Bromley* v. *Hutchins*, 8 Vt. 194, it was held, that such authority did not exist; and it is said, that that decision has been confirmed by a more recent one in that State. Such an act of the sheriff was held to be unwarranted, and to constitute a trespass. It would seem therefore to be the impression of the court, that the right of recapture on civil process, does not exist beyond the limits of the State in which the arrest is made.

If the precise question were presented here, we think that we should pause before deciding that a citizen who had been arrested on civil process in Louisiana, or even in the neighboring State of Vermont, should at the will and pleasure of the officer arresting him, in the event he should have escaped into this State, be retaken and conveyed into the State from which he had escaped.

Even criminal fugitives from justice are not removed from the State without a hearing; and there is no imperious necessity for extending the right of recapture in a civil case, beyond the limits of the State in which the arrest is made. The courts of every State are open for the enforcement of civil rights, and the remedy may be pursued in the State where the individual may be found to reside.

It is not necessary however to give an opinion upon the general question of a right to recapture at all, since the circumstances of this case furnish other grounds which are decisive, and to which we may limit our inquiries.

The facts here show a voluntary escape in the State of Vermont. At McIndoe's Falls, by permission of the officer Beattie, Sherburn the plaintiff, went upon a raft which was at the time in fact in New-Hampshire, and beyond the reach and control of Beattie. The transaction was clearly a voluntary escape.

Now it is well settled, that after a voluntary escape of

a prisoner on execution, the officer who has permitted it, has no authority to retake the debtor, even within the government in which the escape has taken place. Certainly not without permission of the creditor. The authorities cited by the plaintiff's counsel fully sustain this position. *Appleby* v. *Clark*, 10 Mass. 59; *Brown* v. *Getchell*, 11 do. 11; *Commonwealth* v. *Drew*, 4 do. 391; *Pitcher* v. *Bailey*, 8 East. 171; *Atkinson* v. *Matteson*, 2 T. R. 176.

The same principle is recognized in *Langdon* v. *Hathaway*, 1 N. H. 367; *Cheever* v. *Mirrick*, 2 N. H. 376.

If the officer has no authority to retake the prisoner in Vermont, it requires neither argument nor authority to show that he could not lawfully do it in this State.

There must therefore be

*Judgment on the verdict.*