Gonzalo Lloveras et al., Plaintiffs and Appellees, *v.* Tomás Landrón et al., Defendants and Appellants.

No. 4045. Argued February 17, 1927.—Decided July 26, 1927.

*José G. Torres* for the appellants. *V. M. Fernández* and *M. Tous Soto* for the appellees.

Mr. Justice Franco Soto delivered the opinion of the court.

The facts in the present case up to the report of the sale are the same as those related in the case of *Rodríguez et al.* v. *Ramón Alonso et al., ante,* page 322. However, in the present case there is another fundamental cause for declaring the sale null and void.

In the proceedings for the recovery of $198.40 instituted in the Municipal Court of Vega Baja on February 9, 1914, by Successors of Sobrino & Co. v. Héctor and Julio César Rodríguez and Providencia Rodríguez, predecessor in interest of Gonzalo Lloveras and Gilberto Lloveras y Rodríguez, who are also plaintiffs herein, defendant Tomás Landrón acquired in the same proceeding, under the ·marshal's sale, an urban property for $630. It appears from the report of the sale

that in the first place a rural property of 70 acres was sold· to Ramón Alonso for $525. The judgment in favor of Successors of Sobrino & Co. was, as already stated, for $198.40. Therefore, the judgment was satisfied, leaving a surplus for the defendants who are the plaintiffs herein. With this there was an end to the authority of the marshal for further sales of other properties of the defendants. However, the marshal went on with the sale and sold in the second place to defendant Landrón for $630 an urban property situated on land belonging to the municipality of Vega Baja.

Sections 250 and 253 of the Code of Civil Procedure provide:

"Sec. 250. The marshal must execute the writ against the property of the judgment debtor, by levying on a sufficient amount of property, if there be sufficient, collecting or selling the things in action, and selling the other property, and paying to the plaintiff or his attorney so much of the proceeds as will satisfy the judgment. Any excess in the proceeds over the judgment and accruing costs must be returned to the judgment debtor, unless otherwise directed by the judgment or order of the court. . ."

"Sec. 253. All sales of property under execution must be made at auction to the highest bidder, between the hours of nine in the morning and five in the afternoon. After sufficient property has been sold to satisfy the execution, no more can be sold. . ."

It seems clear from these sections of the Code that after the sale of the rural property of 70 acres to Ramón Alonso for $525, a sum more than sufficient to satisfy the judgment, the marshal was without authority to sell and convey the urban property involved in this action. Although there is a conflict in the authorities with regard to the effects of a subsequent sale after the judgment had been satisfied, the better doctrine seems to be that which declares the second sale null and void, even in the case of an innocent purchaser. In 23 Corpus Juris, 749, the jurisprudence is condensed as follows:

"The courts are divided upon the question a's to the effect upon the title of a bona fide purchaser at an execution sale of the satisfaction of the judgment prior to the sale of the property thereunder. In some jurisdictions, especially in the earlier decision's, the rule is laid down that a bona fide purchaser without notice will acquire a good title, even though the execution is paid off or the judgment satisfied before sale, where the sati'sfaction does not appear of record at the time of or before the sale. However, the better doctrine, as adopted by the more recent decisions, is that the satisfaction of the judgment prior to an execution sale will render 'such sale void, and the purchaser will take no title thereunder, even though he bought in good faith and without notice. In any event, no title passes if the purchaser had actual or constructive notice. Satisfaction of the judgment after the sale does not affect the title of a bona fide purchaser."

In note 59, referring to the better doctrine, citation is made of *Lee* v. *Rogers,* 15 Federal Cases, No. 8201, where it is said:

"It is settled without any authority, so far a's I am aware, to the contrary, that a sale under a judgment after its full payment is absolutely void. And a number of the authorities go so far as to say that such a 'sale is void under all circumstances, and as to all persons, even though purchasers in good faith for a valuable consideration, and without notice. The principle stated in the authorities is, that the judgment is the sole foundation of the 'sheriff's power to sell and convey; that, if the judgment has been paid at the time of the sale, the sheriff's power is at an end, and he acts without authority; and that the purchaser under a power i's chargeable with notice if the power does not exist, and purchases at his peril. The following are the principal authorities upon the point: Hammatt v. Wyman, 9 Mass. 138; King v. Goodwin, 16 Mass. 63; Wood v. Colvin, 2 Hill, 568; Carpenter v. Stilwell, 11 N. Y. 69, 70, 76; Swan v. Saddlemire, 8 Wend. 681; Lewis v. Palmer, 6 Wend. 368; Craft v. Merrill, 14 N. Y. 461; Neil'son v. Neilson, 5. Barb. 565–569; Cameron v. Irwin, 5 Hill, 275; Delaplaine v. Hitchcock, 6 Hill, 17; Deyo v. Van Valkenburgh, 5 Hill, 246; Sherman v. Boyce, 15 Johns. 443; Jackson v. Anderson, 4 Wend. 480; Mouchat v. Brown, 3 Rich. Law, 117; Hunter v. Stevenson, 1 Hill (S. C.) 415; State v. Salyers, 19 Ind. 432; Skinner v. Lehman, 6 Ohio 430. Tax sales after payment of the taxes have often been held to

be void, even as to innocent purchasers, upon the same principles. Jackson v. Morse, 18 Johns. 441; Curry v. Hunman, 11 Ill. 420; Hunter v. Cochran, 3 Barr (3 Pa. St.) 105; Dougherty v. Dickey, 4 Watts & S. 146; Blight v. Banks, 6 T. B. Mon. 206."

The reason of the rule is also set forth in the same note as follows:

"The reason of the rule is that the existence of the debt, whose collection is the sole object of the issuance of the fi. fa., is the basis on which the power to sell alone depends; that when the debt is extinguished, the authority under. . . the execution dies with it, and that he who buys under a power buys at his peril, and takes nothing by his purchase if the alleged power does not exist. McClure v. Logan, 59 Mo. 234, 237 (crit. Reed v. Austin, 9 Mo. 722, 45 Am. D. 336.) The judgment is the power back of, and authorizing, the execution sale. If the judgment has been paid off, the power is gone, and no title passes, even to an innocent purchaser. Shaffer v. McCrackin, 90 Iowa 578, 581, 58 N. W. 910, 48 Am. S. R. 465."

Already this Supreme Court in *Solá* v. *Castro*, 32 P.R.R. 740, expressed itself in general terms as follows with regard to the authority of the marshal:

"We also infer from the foregoing doctrine that an innocent purchaser need not concern himself or inquire about errors of procedure, but it is his duty to investigate the capacity or authority with or under which the marshal is acting and ascertain his jurisdictional authority to make the sale, and for that purpose the purchaser need do no more than inspect the judgment and the writ of execution. *Blood* v. *Light, supra.*"

Therefore, we come to the conclusion, in the light of the law and the jurisprudence, that the marshal of the Municipal Court of Vega Baja did not pass to the defendant any title to the urban property sold to him at the judicial sale because of his absolute lack of authority.

The appellant, alleging that because the house conveyed to him was in a very bad condition he razed it and built on the same lot a new concrete house valued at $8,000, prayed in the nature of a counterclaim that in case of judgment in

favor of the plaintiffs they should pay back to him $8,000, the value of the new building, and the sum of $630 which he had paid for the old house at the auction sale.

The appellant, however, scarcely argues this contention in his brief. For our part it will be sufficient to say that the sale of the house by the marshal being void, the claim has no support, at least as regards the purchase price at the auction sale. The plaintiffs only contracted with the defendant and there has been no juridical connection between them upon which the defendant can base a claim for the refund of $630, the purchase price at the auction sale. It results also as a question of fact that it does not appear from the record that the plaintiffs received or profited by any amount proceeding from that sum, nor has it been shown that they acted in any manner implying a confirmation of the sale.

As regards the sum of $8,000, the value of the new house, in view of the form given to the judgment by the trial court, by implication the question was decided in favor of the appellant. It was prayed in the complaint, among other things, that as the house sold had been destroyed and a new one built in its place, delivery to the plaintiffs of the new house be ordered, without any indemnity whatever to the defendant. On this point the trial court said in its opinion:

"DESTRUCTION OF REAL PROPERTY.—It is alleged in the amended complaint that the defendant had razed the house bought by him at the auction sale and that he built another which was recorded in the Registry of Property on June 12, 1915. The lot on which the new house has been built belongs to the Municipality of Vega Baja and is recorded in its name in the same Registry, and the house had been built, according to a certificate from the Registrar, with the approval and authorization of the Municipal Council of that Municipality.

"The plaintiffs pray that as the defendant had no right to destroy the house that had been sold to him in the suit and had built another, being a possessor in bad faith, they are entitled to the new building and that its delivery to them should be ordered, without any right of indemnity. They also pray for any other relief consistent with

their pleadings, including the rents produced by both properties and received by the defendant since the beginning of its occupation. The rents are computed in the complaint at $20 monthly for the old house and $75 for the new building.

"The following doctrine is laid down in Isaach v. Del Toro, 33 P.R.R. 959:

" 'The contention merely serves to illustrate and to emphasize the danger of an indiscriminate application of the code provisions governing the rescission or annulment of existing contracts to revendicatory actions for the recovery of property sold at a judicial sale alleged to have been void *ab initio* because of jurisdictional defects. In a case of this kind plaintiff is entitled to recover from defendant, as a possessor in bad faith, the property together with the rents and profits, or, as damages and in lieu thereof, an equivalent in money if the property has passed into the hands of an innocent purchaser.'

"And in Hernández v. Matanzo, 34 P.R.R. 723, the following doctrine was laid down:

" 'If in executing a judgment in unlawful detainer a house of the defendant situated on a part of the property to be vacated is arbitrarily destroyed, the defendant has a right to recover in an action for damages the value of the house and its rents.'

"In the case of Hernández v. Matanzo, *supra,* the plaintiff built a house on a lot belonging in part to the defendant and in part to a third person. Under an action in unlawful detainer brought by the plaintiff the marshal pulled down the building, which was a frame building, and as the property could not be returned damages were granted for the value of the building and its rents computed until the satisfaction of the judgment.

"Under the circumstances of the present case the delivery of the new building can not be decreed, but can the plaintiffs be compensated for the value of the house destroyed and its rents, should they pray for any other relief justified by the pleadings? A court may grant any relief other than that prayed for if its pronouncements are necessarily included in the prayers and are justified by the pleadings and the evidence. Gandía v. Trias & Stubbe, 29 P.R.R. 629.

"It has been shown by the evidence that the house pulled down had been sold by the marshal for $630.00 and that it rented for $30 per month, although the complaint only alleged a rent of $20 monthly, without any request being made to amend the complaint so as to conform to the evidence."

Finally the court adjudged that the defendant-appellants pay to the plaintiffs the sum of $630 as the value of the house destroyed, plus $20 per month as fruits until satisfaction of the judgment. The same ground exists for applying the *ratio decidendi* in the *Alonso Case, supra,* as to the return of the fruits by the defendant.

For the foregoing reasons the judgment appealed from must be affirmed.